**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| EYETALK365, LLC,<br><br>         Plaintiff,<br><br>    vs.<br><br>ZMODO TECHNOLOGY CORP. LTD.,<br><br>        Defendant. | 2:17-cv-02714-RCJ-PAL<br><br>**ORDER** |

This case arises out of the alleged infringement of a patent for an audio-video doorbell system. Pending before the Court are two motions to dismiss.

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiff Eyetalk365, LLC is a North Carolina entity with its principle place of business in that state. (Compl. ¶ 2, ECF No. 1). Plaintiff is the assignee of U.S. Patent No. 9,432,638 ("the Patent") entitled "Communication and Monitoring System," which issued on August 30, 2016. (*Id.* ¶¶ 11–12). Defendant Zmodo Technology Corp. Limited is a Nevada entity with its principle place of business in Illinois. (*Id.* ¶ 3).

Plaintiff sued Defendant in the Western District of North Carolina, alleging direct infringement of claims 1 and 6 of the Patent in violation of 35 U.S.C. § 271(a) "by making, using, offering for sale, selling, and/or importing [infringing] devices in the United States," (*id.*

¶ 13), as well as inducing infringement of those claims in violation of 35 U.S.C. § 271(b), (*id.* ¶ 21). Defendant answered and filed counterclaims for declaratory judgment of non-infringement and invalidity under §§ 101, 102, 103, and 112. (Answer & Countercl., ECF No. 15). Both parties demanded a jury.

Defendant moved to dismiss for failure to state a claim under 35 U.S.C. § 101. Plaintiff answered the Counterclaim and moved to dismiss Defendant's fourth through ninth affirmative defenses for failure to satisfy Rule 8(c). Chief Judge Whitney of the Western District of North Carolina denied the dispositive motions without prejudice as premature.

Soon after the Supreme Court decided *TC Heartland*, Defendant filed a motion to dismiss or transfer because it resided in Nevada and had no regular and established place of business in the Western District of North Carolina. *See* 28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1520–21 (2017). Chief Judge Whitney granted the motion in part, transferring the case to this District. The case was randomly assigned to Judge Dorsey but immediately randomly reassigned to this Court because Judge Dorsey was not a patent pilot program judge.[1] Claim construction briefing was completed before transfer, but the parties and the Magistrate Judge have not yet determined whether to consolidate claim construction in the related cases. Before construing the claims, the Court will decide the motions to dismiss filed before transfer, as the parties indicated should be done at a recent status conference before the Magistrate Judge. The Court will not consider the previously filed motion for partial summary judgment until after claim construction.

---

1 Judge Du and the undersigned jointly reassigned related Case No. 3:17-cv-686 from Judge Du to this Court. In that case, Plaintiff sued Defendant in this District for infringement of U.S. Patents Nos. 9,485,478; 9,516,284; 9,635,323; 9,706,178; and 9,648,290, all of which are also entitled "Communication and Monitoring System."

## II.    LEGAL STANDARDS

### A.    Rule 8(a)

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency, *see N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983), and dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A court treats factual allegations as true and construes them in the light most favorable to the plaintiff, *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986), but does not accept as true "legal conclusions . . . cast in the form of factual allegations." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).  A plaintiff must plead facts pertaining to his case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  That is, a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), he must also allege the facts of his case so that the court can determine whether he has any basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*

& Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Also, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record" if not "subject to reasonable dispute." *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

**B.      Rule 8(c)**

The Court has addressed the standards for stating affirmative defenses in patent cases. *See Rockwell Automation, Inc. v. Beckhoff Automation, LLC*, 23 F. Supp. 3d 1236, 1241–42 (D. Nev. 2014).  "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979) (citing *Conley*, 355 U.S. at 47–48).  But there are differences between the pleading standards of claims and defenses under Rules 8(a) and 8(c).  *Iqbal* is based on the Supreme Court's reading of Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," but affirmative defenses under Rule 8(c) must simply be "affirmatively state[d]." *See Bank of Beaver City v. Sw. Feeders, L.L.C.*, No. 4:10CV3209, 2011 WL 4632887, at *5–6 (D. Neb. Oct. 4, 2011).  That court noted that the Eighth Circuit had found the bare assertion of a statute of limitations defense to be sufficient. *See id.* at *6 (quoting *Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 361 (8th Cir. 1997) (quoting

*Daingerfield Island Protective Soc'y v. Babbitt*, 40 F.3d 442, 445 (D.C. Cir. 1994))).  An "affirmative state[ment]" need not contain facts making the defense plausible, as under *Iqbal*, because Rule 8(c) does not require a "showing," as does Rule 8(a), but an affirmative defense must at least fairly identify the legal theory upon which it rests. *See Tyco Fire Prods. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 900 (E.D. Pa. 2011) ("In light of the differences between Rules 8(a) and 8(c) in text and purpose, the Court concludes that *Twombly* and *Iqbal* do not apply to affirmative defenses. An affirmative defense need not be plausible to survive; it must merely provide fair notice of the issue involved.").

Because of the difference in language between Rules 8(a) and 8(c), the Court leaves it to the appellate courts to institute something like a plausibility standard for Rule 8(c).  Judge Robreno's interpretation of Rule 8(c), that an affirmative defense need only "provide fair notice of the issue," is persuasive. *See Tyco Fire Prods. LP*, 777 F. Supp. 2d at 900.  This standard saves the parties and the court some amount of wasted effort in cases where a broadly stated affirmative defense can be divided into distinct legal theories, not all of which necessarily apply, but it avoids the imposition of the plausibility standard, which is based at least in part on the particular language of Rule 8(a) requiring a "showing." *See Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration removed).

C.      **Patentability under 35 U.S.C. § 101**

Commentators have noted the lack of clarity in the test for abstractness challenges under § 101. *See, e.g.*, Shane D. Anderson, *Software, Abstractness, and Soft Physicality Requirements*, 29 Harvard J. L. & Tech. 567, 572–74 (2016).  The *Alice Corp.* Court ruled that implementation of an abstract idea (such as an algorithm) onto a general purpose computer did not provide a necessary "inventive concept" to make the use of the idea patentable, but the Court did not

define "abstract idea" apart from giving examples from prior case law. Brady P. Gleason, *Don't Give Up Section 101, Don't Ever Give Up*, 65 Cath. U. L. Rev. 773, 790 (2016).

The *Alice Corp.* Court "found that a 'physical' implementation of an abstract idea by a computer was "beside the point." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358–59 (2014). What the *Alice Corp.* Court found to be "beside the point" was not the physical implementation of abstract ideas generally, but rather the bare fact that a generic computer is itself a physical object. *See id.* That fact did nothing to change the fact that the physical computer was being used in that case purely in its capacity as a generalized computing device to perform abstract calculations. *See id.* at 2359. In *Affinity Labs. of Tex., LLC v. DIRECTV, LLC*, the Court of Appeals invalidated a patent that "claim[ed] the general concept of out-of-region delivery of broadcast content through the use of conventional devices, without offering any technological means of effecting that concept." 838 F.3d 1253, 1262 (Fed. Cir. 2016). Also, "the claims [we]re directed not to an improvement in cellular telephones but simply to the use of cellular telephones as tools in the aid of a process focused on an abstract idea. That is not enough to constitute patentable subject matter." *Id.*

The Court of Appeals has addressed abstractness since *Alice Corp.* In *In re Smith*, the Court of Appeals affirmed the rejection of a patent claim directed to a casino game under *Alice Corp. See* 815 F.3d 816, 819 (Fed. Cir. 2016). The applicant had attempted to patent a method for dealing a card game while accepting and paying bets, as in a casino. *See id.* at 817–18.[2] Applying the two-step test under *Alice Corp.*, the Court of Appeals first found that "rules for conducting a wagering game" constituted an abstract idea. *See id.* at 818–19. In affirming the

---

2 Although the patent application was titled "Blackjack Variation," the claim at issue appears to have been directed to a variation of baccarat. *See id.*

examiner's rejection of the claim, the Patent Trial and Appeals Board had correctly noted that, "[a] wagering game is, effectively, a method of exchanging and resolving financial obligations based on probabilities created during the distribution of the cards." *Id.* (alteration in original). Methods of conducting wagering games were just as abstract as methods of exchanging financial obligations and hedging risk. *Id.* at 819 (citing *Alice Corp.*, 134 S. Ct. 2347; *Bilski v. Kappos*, 561 U.S. 593 (2010)). The Court of Appeals noted that its "own cases have denied patentability of similar concepts as being directed towards ineligible subject matter." *Id.* (citing *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (finding offer-based price optimization abstract), *cert. denied*, 136 S. Ct. 701 (2015); *Planet Bingo, LLC v. VKGS LLC*, 576 Fed. Appx. 1005, 1007–08 (Fed. Cir. 2014) (determining that methods of managing a game of bingo were abstract ideas)). The Court of Appeals then found that the claim contained no inventive concept sufficient to transform the abstract idea into a patent eligible application. *See id.* The Court of Appeals rejected the argument that the requirement of shuffling and dealing physical playing cards was sufficient, because, like the recitation of computer implementation in *Alice Corp.*, shuffling and dealing a standard deck of cards was a "purely conventional step[]." *See id.*

As the Court has noted in other cases, the best test for abstractness under the first *Alice Corp.* step is whether the invention can be practiced entirely in the mind of a sufficiently intelligent person:

> Such a method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101. Methods which can be performed entirely in the human mind are unpatentable not because there is anything wrong with claiming mental method steps as part of a process containing non-mental steps, but rather because computational methods which can be performed entirely in the human mind are the types of methods that embody the "basic tools of scientific and technological work" that are free to all men and reserved exclusively to none.

*CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) (citing *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)) (footnote omitted).  This interpretation comports with nearly half a century of case law. *See id.*; *Parker v. Flook*, 437 U.S. 584 (1978); *Gottschalk*, 409 U.S. 63.  The Supreme Court has held that processes containing one or more steps that can be conducted in the abstract (such as mathematical formulae) are not unpatentable under § 101 so long as it is not the abstract concepts themselves that are sought to be patented and the process sought to be patented is not abstract as a whole. *See Diamond v. Diehr*, 450 U.S. 175, 191–92 (1981) (refusing to invalidate a claim for a method of molding rubber simply because the claim recited mathematical formulae).  As this Court has noted, the cases stand for the proposition that the recitation of a generic computer does not make patentable a process that is otherwise unpatentable under § 101, but not for the putative inverse proposition that the recitation of a generic computer makes unpatentable a process that is otherwise patentable under § 101. *See id.* at 187 ("[A] claim drawn to subject matter otherwise statutory does not become nonstatutory simply because it uses a mathematical formula, computer program, or digital computer. . . . It is now commonplace that an *application* of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection."); Donald S. Chisum, 1 Chisum on Patents § 1.03[6], at 1-182 (2016) ("[I]n *Alice Corp.* . . . the Court held that attaching a requirement of computer implementation to method claims . . . would not render the claims patent eligible if the method was otherwise a patent ineligible abstract idea.").

The *Diamond* Court also made clear that the tests for abstractness and anticipation are distinct, citing the clearly expressed intent in the Senate Report on the 1952 Patent Act that § 101's "novelty" requirement was to be interpreted by way of the standards elucidated under § 102:

In determining the eligibility of respondents' claimed process for patent protection under § 101, their claims must be considered as a whole. It is inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the analysis. *This is particularly true in a process claim because a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made.* **The "novelty" of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter.**

It has been urged that novelty is an appropriate consideration under § 101. Presumably, this argument results from the language in § 101 referring to any "new and useful" process, machine, etc. Section 101, however, is a general statement of the type of subject matter that is eligible for patent protection "subject to the conditions and requirements of this title." Specific conditions for patentability follow and § 102 covers in detail the conditions relating to novelty. **The question therefore of whether a particular invention is novel is "wholly apart from whether the invention falls into a category of statutory subject matter."** The legislative history of the 1952 Patent Act is in accord with this reasoning.

. . . .

In this case, it may later be determined that the respondents' process is not deserving of patent protection because it fails to satisfy the statutory conditions of novelty under § 102 or nonobviousness under § 103. A rejection on either of these grounds does not affect the determination that respondents' claims recited subject matter which was eligible for patent protection under § 101.

*Diamond*, 450 U.S. at 188–91 (citations and footnotes omitted; emphases added).

For this reason, the Court has rejected arguments that a patent claim is abstract because its only concrete, physical component not relying on a computer's generalized computing capabilities was well-known or long-practiced. *See CG Tech. Dev., LLC v. Bwin.Party (USA), Inc.*, No. 2:16-cv-871, 2017 WL 58575, at *2–4 (D. Nev. Jan. 4, 2017) (Jones, J.). A contrary approach would judicially rewrite the statutory framework for patent validity established by Congress by invalidating a patent not under §§ 101 or 102 but rather under a hybrid of §§ 101 and 102 that Congress has never adopted. The Supreme Court has declined to do so and has made clear that patent claims must be tested against the statutory requirements for validity as a

whole. That is because it is patent claims, i.e., inventions, to which a patentee is granted exclusive rights, not the elements of a claim. One can only infringe a patent claim, not an element thereof. The statutory conditions refer to eligibility for a "process, machine, manufacture, or composition of matter," 35 U.S.C. § 101, and "invention[s]," *id.* §§ 102, 103, not "elements of claims." It is the process, machine, etc., the "invention," that is patented. Just as a defendant cannot infringe an element of a claim but only a claim as a whole, a court cannot invalidate a claim piecemeal, declaring individual elements of a claim to be invalid under various statutes, e.g., ruling one element of a claim to be ineligible under § 101, another element anticipated under § 102, etc. That approach has been rejected by the Supreme Court. *See Diamond*, 450 U.S. at 188–91. Notably, the *Alice Corp.* Court cited *Diamond* twice without criticism. *See Alice Corp.*, 134 S. Ct. at 2354 (citing *Diamond*, 450 U.S. at 187) (reaffirming that "an invention is not rendered ineligible for patent simply because it involves an abstract concept"); *id.* at 2355 n.3 (citing *Diamond*, 450 U.S. at 188) (quoting the rule that "patent claims must be considered as a whole"). Given the *Alice Corp.* Court's conspicuous declination to criticize *Diamond* while twice citing thereto in a case that implicated *Diamond*'s core holding, this Court is heavily disinclined to interpret any ambiguous language by the Supreme Court (much less the Court of Appeals) as having abrogated the rule of that case.[3]

---

3 It is important to note that *Alice Corp.* did not create the abstractness bar to patentability but rather introduced new language to apply an old rule, just as previous cases had done. Some form of the two-step test for the patentability of processes directed to abstract concepts had been in use for at least 36 years before *Alice Corp.* was decided. *See In re Freeman*, 573 F.2d 1237, 1245 (C.C.P.A. 1978) ("First, it must be determined whether the claim directly or indirectly recites an 'algorithm' in the *Benson* sense of that term . . . . Second, the claim must be further analyzed to ascertain whether in its entirety it wholly preempts that algorithm."). The Court of Appeals adjusted the test in 2008. *See In re Bilski*, 545 F.3d 943, 957 (Fed. Cir. 2008) (holding that non-preemption under the second step of what was then called the "*Freeman–Walter–Abele* test" requires that the claim be "tied to a particular machine or bring[] about a particular transformation of a particular article"). The *Alice Corp.* Court noted that it had previously held

# III.    ANALYSIS

## A.    Defendant's Motion to Dismiss

Defendant argues that Claims 1 and 6 are directed to an abstract idea under the first *Alice Corp.* step. The Court disagrees. Detecting the presence of a person at a door, sending a video of the person to be viewed, and speaking with the person at the door are all concrete steps requiring more than the abstract thinking capabilities of a person or a computer. Regardless of anticipation or nonobviousness under §§ 102 and 103—neither of which is at issue in the present motion, and upon which the Court states no opinion—Claim 1 is patent-eligible under § 101.

## B.    Plaintiff's Motion to Dismiss

Plaintiff argues that Defendant's fourth through ninth affirmative defenses should be stricken because they are insufficiently stated. The fourth affirmative defense cites statutory limitations on damages (35 U.S.C. §§ 286–87) and limitations on jurisdiction where infringement is done by or for the United States (28 U.S.C. § 1498). The fifth affirmative defense cites a very specific estoppel issue. The sixth affirmative defense lists "estoppel, waiver, laches, and unclean hands." The seventh affirmative defense lists "exhaustion, implied license and restrictions on double recovery." The eighth affirmative defense is a denial of infringement, and the ninth affirmative defense is a denial that the case is "exceptional" under the meaning of the fee-shifting statute. The Court finds that the fourth through seventh affirmative defenses provide Plaintiff fair notice of the issues involved. *See Tyco Fire Prods. LP*, 777 F. Supp. 2d at 900. The eighth and ninth affirmative defenses are in fact passive defenses that need not have

---

that the "machine-or-transformation test" was not the *sine qua non* of the patentability of process claims directed to abstract ideas under § 101, but that the crux of the test was the addition of an "inventive concept." *See Alice Corp.*, 134 S. Ct. at 2355 (quoting *Mayo Collaborative Servs. v. Promethius Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)).

been stated as affirmative defenses. Infringement and exceptionality are things a plaintiff is bound to prove. The Court will not bother to strike these affirmative defenses, however, because they are not redundant, immaterial, impertinent, or scandalous, but merely superfluous. In any case, Defendant has withdrawn the challenged affirmative defenses in an amended pleading.

## CONCLUSION

IT IS HEREBY ORDERED that the Motions to Dismiss (ECF Nos. 13, 26) are DENIED.

Dated February 14, 2018.

_____
ROBERT C. JONES
United States District Judge